685 P.2d 1319

**Forrest FLEMING, Plaintiff/Appellee,**

v.

**PIMA COUNTY, Arizona; Pima County Board of Supervisors, E.S. "Bud" Walker, Katie Dusenberry, Conrad Joyner, Sam Lena and David Yetman; Sandy Bowling, an employee of Pima County, Defendants/Appellants.**

**No. 2 CA–CIV 4611.**

Court of Appeals of Arizona, Division 2.

June 14, 1983.

Rehearing Denied Oct. 5, 1983.

Review Granted Jan. 4, 1984.

See also 125 Ariz. 523, 611 P.2d 110.

**168**

Watt & Cohen by Melvin C. Cohen, Tucson, for plaintiff/appellee.

Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by John Gabroy, Tucson, for defendants/appellants.

## OPINION

HOWARD, Chief Judge.

In 1977 appellee was the automotive service supervisor in the automotive service department of Pima County. Due to a reorganization of the department he was laid off effective July 1, 1977. He filed suit against the county contending, inter alia, that he was wrongfully terminated since the layoff was a subterfuge to fire him without having to go through the merit system. The trial court agreed and reinstated appellee as a "permanent county worker,"[1] awarded him judgment in the sum of $20,705 for his backpay with prejudgment interest in the sum of ten per cent on what would have been the net amount on each paycheck as it became due, and also awarded appellee attorney's fees in the sum of $14,000 plus his costs.

Appellants contend the trial court erred in (1) finding that the layoff was a subterfuge to avoid trying to discharge appellee for cause; (2) declining to deduct unem-

ployment and GI benefits from the backpay award; (3) awarding prejudgment interest; (4) failing to hold that appellee did not mitigate his damages, and (5) awarding attorney's fees.

Since the trial court made findings of fact, our review shall be guided by these principles: The trial court's findings of fact are binding unless clearly erroneous and due regard should be given to the trial court to weigh the credibility of witnesses. *Mead v. Nacey,* 23 Ariz.App. 121, 531 P.2d 166 (1975), cert. den. 423 U.S. 866, 96 S.Ct. 128, 46 L.Ed.2d 95. Where the trial court's necessary findings are based on a conflict in the evidence, they will not be disturbed on appeal. *Gressley v. Patterson Tillage & Leveling Inc.,* 119 Ariz. 154, 579 P.2d 1124 (App.1978). On appeal from a judgment entered on findings, the appellate court views the evidence in the strongest manner for appellee and it cannot substitute its opinion of the evidence for that of the trial court. *Romney Produce Company v. Edwards,* 9 Ariz.App. 258, 451 P.2d 338 (1969).

The record and the trial court's findings of facts show that appellee worked in the automotive services department of the Pima County Highway Department. Jerry Jones was the director of the department and Fleming was the automotive service supervisor. Sandy Bowling was in charge of the automotive service department and was Fleming's immediate supervisor.

Fleming's job was to supervise the people who pumped the gas at the Mission Road branch of the division, see that there was sufficient gas on hand and order it when necessary. There was friction between Bowling and Fleming. Prior to Fleming's layoff, Bowling removed the tire shop, oil and lube bay, outlying service stations and motor pool from Fleming's authority. Bowling constantly criticized Fleming and at one time he objected to Fleming receiving his annual salary increase and threatened him with discipline. Two months before the layoff Bowling rec-

---

**1.** The parties agreed that if Fleming won he    would be employed in such a position.

ommended to Fleming that he ought to change to an administrative field.

In 1977, when the automotive service division was still under Jerry Jones, the Pima County Board of Supervisors requested all county departments to reduce their proposed budgets for the new fiscal year 1977–1978. The automotive service division at that time had 55 permanent positions, of which 50 were filled. After consulting with the finance department and the county manager, Jones submitted a budget for automotive services which proposed the funding of 48 permanent positions, including the position held by Fleming. Jones recommended the elimination of the positions of deputy director, clerk typist, a shop supervisor, one automotive mechanic and three mechanics' helpers. At least one of the mechanics' helper positions was filled which meant that at least one helper would have to be laid off. Any positions not filled were to be eliminated.

On May 24, 1977, the board of supervisors removed the automotive service department from the control of the highway department and appointed Sandy Bowling as its director. The board told Bowling he could submit his own proposed budget. Bowling prepared a new budget eliminating Fleming's position. Fleming's duties were to be distributed among other employees in the automotive service department. Bowling contended that this elimination was based solely on his intention to retain more mechanics' helpers in the "budgetary crunch" that existed. Bowling's budget also provided for one new paint and body position and created a "vehicle maintenance inspector."

Bowling presented his new budget to the board on June 16, 1977. At the hearing before the board, Bowling told them that his reorganization would save money, cause the loss of one position, and this would not cause a hardship because "the individual is a troublemaker anyway." Bowling's proposed budget was approved the next day and Fleming was given notice of his termination effective in two weeks.

A new mechanics' helper was not hired and the new paint and body position was never filled. As the trial court observed, Bowling never adequately explained why the unfilled paint and body position could not have been used instead of Fleming's position to retain the mechanics' helper position. Jones testified that Fleming was an outstanding employee and he did not understand why July 1, 1977, was used as a termination date since the department head could have worked to find a slot for Fleming within the county until the final budget was approved in September. Jones thought the budget process was used specifically to eliminate Fleming. Although evidence was presented that there was increased efficiency in Bowling's department over the succeeding years after the layoff of Fleming, this increased efficiency was not connected to the elimination of Fleming's position.

While the county has recited to us a great deal of law concerning its right to reorganize without incurring any liability towards an employee who may be laid off in a bona fide reorganization, the thrust of the county's argument is that the trial court's finding that the layoff was a subterfuge is unsupported by the evidence. We do not agree. While there might have been conflicting evidence and while the trial court may have drawn other inferences from the evidence which may have been favorable to the county, we are unable to say that the trial court's findings of fact are clearly erroneous and unsupported by the evidence. All of the cases which the county cites in favor of its position stand for the proposition that the reorganization must be *bona fide.* See *City of Phoenix v. Powers,* 57 Ariz. 262, 113 P.2d 353 (1941). We agree with the county's contention that the validity of an otherwise proper abolition of a position is not negated by the presence of ulterior motives. See *Kessel v. Civil Service Comm'n,* 130 N.J.L. 618, 34 A.2d 131 (1943); *Santucci v. City of Paterson,* 113 N.J.L. 192, 173 A. 611 (1934); *Greco v. Smith,* 40 N.J.Super. 182, 122 A.2d 513 (1956); *City of San Antonio v. Wallace,* 161 Tex. 41, 338 S.W.2d 153

(1960). However, the trial court here could legitimately conclude that the reorganization was not done in good faith especially in view of the fact that the avowed purpose for laying off Fleming, to-wit: a mechanics' helper was more important than an automotive service supervisor, was not fulfilled. As was said by the court in *Greco v. Smith*, supra:

"The mere fact that the removal of an individual from the municipal payroll results in an economy is not the exclusive test, since such removal will always be manifested by a saving. The question is, not narrowly whether a plan conceived and adopted for the purposes of saving money actually, in operation, attained that purpose, but whether the design in adopting the plan was to accomplish economy or, on the contrary, was to effect the removal of a public employee, protected by civil service, without following the statutory procedure for removal." 122 A.2d at 518.

A.R.S. § 11–621(A), prior to its amendment in 1982, stated: "No payment exceeding five hundred dollars shall be made from the treasury of the county except upon demand duly presented and allowed ...." A.R.S. § 11–622 provides:

"A person having a claim against a county shall, within six months after the last item of the account accrues, present to the board of supervisors of the county against which the demand is held, a written itemized claim executed by him under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount thereof, and stating that the claim and each item thereof is justly due. The board shall not consider a claim unless the demand therefor is presented within such time."

Appellee waited more than three years to file his claim with the county. The county contends that Fleming's claim for back wages was barred by his failure to file the claim within six months from the time that he was laid off. Appellee contends that since his action was for wrongful discharge, a tort, A.R.S. § 11–622 does not apply.

It is true that tort claims do not fall within the statute, *Norcor of America v. Southern Arizona International Livestock Ass'n*, 122 Ariz. 542, 596 P.2d 377 (App.1979). However, appellee does not have a tort claim, but rather a claim ex contractu. See *Old Dominion Copper Mining and Smelting Co. v. Andrews*, 6 Ariz. 205, 56 P. 969 (1899). The tort of wrongful discharge is a relatively new tort fashioned by the courts to afford relief in at-will employment contracts. See *Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (App.1980) and *Larsen v. Motor Supply Co.*, 117 Ariz. 507, 573 P.2d 907 (App.1977). Appellee was not an at-will employee since the county could only discharge him for cause or by a bona fide lay-off.

Alternatively, appellee contends he complied with the statute when he filed a claim within six months after the time he became a full-time county employee in a federally funded program receiving pay equal to the job from which he was laid off. He argues that when he became a full-time employee, the "... last item of the account ..." accrued within the language of A.R.S. § 11–622. We do not agree. The language referred to envisions a situation in which labor is performed or goods and merchandise provided over a period of time and allows the claimant to file his claim after the payment for the last labor or item of merchandise becomes due rather than requiring that he make a claim before the contract has been completely performed. It has no application to damages accruing as a result of a breach of contract.

The statute applies to claims ex contractu, *City of Phoenix v. Mayfield*, 41 Ariz. 537, 20 P.2d 296 (1933), except for those claims which we referred to in *Norcor of America v. Southern Arizona International Livestock Ass'n*, supra. Appellee's claim for damages was ex contractu and untimely filed. Compliance with the statute was mandatory and the trial court

had no jurisdiction to award a judgment for back wages. See *American Credit Bureau v. Pima County*, 122 Ariz. 545, 596 P.2d 380 (App.1979). This does not mean, however, that appellee needed to file a claim in order to be reinstated. It is obvious from reading A.R.S. § 11–621 and § 11–622 that they only apply to claims for money and not to claims seeking purely equitable relief.[2]

■ A.R.S. § 12–341.01 authorizes the payment of attorney's fees to the prevailing party in any contested action arising out of a contract, expressed or implied. The county contends that the claim here did not arise out of contract, express or implied, but rather that its relationship to a civil service employee is the product of statutory law and the constitution. See *Miller v. State of California*, 18 Cal.3d 808, 557 P.2d 970, 135 Cal.Rptr. 386 (1977); *Williams v. Los Angeles City Dept. of Water*, 130 Cal.App.3d 677, 181 Cal.Rptr. 868 (1982); *Jackson v. Kurtz*, 65 Ohio App.2d 152, 416 N.E.2d 1064 (1979); *Baker v. Civil Service Comm'n*, 245 S.E.2d 908 (W.Va.1978). We find these cases to be inapposite since they do not involve the precise question involved here. We find that for the purposes of A.R.S. § 12–341.01 there is a contractual relationship between the county and its employees. While it is true that the terms and conditions of employment are fixed by statute, rules or regulations creating it and not by contract, the relationship between the employee and the county is nevertheless in the nature of a contract. In *City of Phoenix v. Kidd*, 54 Ariz. 75, 92 P.2d 513 (1939) the court referred to the relationship of employment with a municipal government as a contract of employment, a contractual relationship.

We do not have to address the other issues raised by appellants in view of our disposition.

That part of the judgment awarding appellee backpay with interest is vacated and set aside. The balance of the judgment is affirmed.

HATHAWAY and BIRDSALL, JJ., concur.

---

2. In *Yamamoto v. Santa Cruz Cty. Bd. of Supervisors*, 124 Ariz. 538, 606 P.2d 28 (App.1979), we held that a claim for mandamus was within the claim statute. This was correct since the mandamus claim was for the payment of money.