723 P.2d 691

**Eric H. MARCUS and Irene M. Marcus, husband and wife, Plaintiffs/Appellees/Cross-Appellants,**

v.

**Lillian L. FOX, a single woman, and Robert A. Gold, a single man, Defendants/Appellants/Cross-Appellees.**

**No. 2 CA–CIV 5369.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 13, 1985.

DeConcini McDonald Brammer Yetwin &
Lacy, P.C. by David C. Anson and Michael R. Urman, Tucson, for plaintiffs/appellees/cross-appellants.

Miller & Pitt, P.C. by John A. Baade, Tucson, for defendants/appellants/cross-appellees.

HATHAWAY, Presiding Judge.

In this appeal, Lillian L. Fox and Robert A. Gold, (Fox) appellants/cross-appellees, and Eric H. Marcus and Irene M. Marcus (Marcus), appellees/cross-appellants, each seek review of a portion of the judgment below. Fox appeals the denial of a motion for judgment notwithstanding the verdict or in the alternative a new trial, and the award of prejudgment interest. Marcus contests the denial of attorney's fees. We affirm the denial of the motion for judgment notwithstanding the verdict or in the alternative a new trial and the denial of attorney's fees. We reverse the trial court's award of prejudgment interest.

In 1979, Lillian Fox visited Eric Marcus, a psychiatrist, for counseling. The counseling sessions took place in Los Angeles, where both parties reside. Apparently the parties decided to investigate a real estate deal in Tucson where Fox was a developer. It is disputed, however, whether Fox or Marcus initiated the suggestion of conducting business together. As a result, in June 1979, Marcus traveled to Tucson to meet with Fox and view properties. Fox showed Marcus an eight-unit apartment complex she and Robert Gold owned which, at that point, was near completion. The parties arrived at terms for the sale of the property for $265,000. Fox then undertook to arrange financing for Marcus from American Savings and Loan Association. In conjunction with submitting the loan application, Fox was required to have an appraisal completed on the property. Ultimately, Marcus' loan application was denied due to lack of liquidity.

It is disputed whether, at the time Fox advised Marcus the loan application had been denied, Marcus asked Fox about the value of the appraisal, which is also disputed. The appraisal contained three figures: $182,000, $240,000 and $241,000.

Marcus stated that he asked Fox about the appraisal and she told him that the appraisal figure was $255,000. She later told him it was $241,000. He claimed the appropriate figure, which was hidden from him, was $182,000. Fox claims the appropriate figure was $240,000, a figure of which Marcus was aware.

On August 23, 1979, a new contract with an alternative financing plan was entered into by the parties. The purchase price of the second contract was $269,000. The transaction closed on September 15, 1979. On September 1, 1981, this action for fraud was instituted.

Fox raises two issues on appeal: (1) The evidence was insufficient to sustain a fraud verdict and therefore the trial court erred in not granting the motion for a judgment notwithstanding the verdict or in the alternative a new trial; (2) the award of pre-judgment interest was improper because (a) the claim was not liquidated, (b) if it was liquidated, no demand for payment had been made and (c) in any event, since the claim was grossly inflated, prejudgment interest should be barred as a matter of public policy.

Marcus raises one issue on appeal, that the court erred in failing to delineate its reasons for the denial of attorney's fees. He argues that the court should have indicated whether fees were denied because they were inappropriate in this case or because the court in its discretion denied fees under A.R.S. § 12–341.01(A).

### I. Fraud

■ In order to recover in a fraud action, the plaintiff must prove by clear and convincing evidence each of the nine elements of common law fraud. *Cullison v. Pride O'Texas Citrus Assoc.*, 88 Ariz. 257, 355 P.2d 898 (1960). Those nine elements are:

1. A representation.
2. Its falsity.
3. Its materiality.
4. The speaker's knowledge of its falsity or ignorance of its truth.

5. His intent that it should be acted upon by the person and in a manner reasonably contemplated.
6. The hearer's ignorance of its falsity.
7. His reliance on its truth.
8. His right to rely thereon.
9. His consequent and proximate injury.

*Moore v. Meyers*, 31 Ariz. 347, 253 P. 626 (1927); *Wagner v. Casteel*, 136 Ariz. 29, 663 P.2d 1020 (App.1983).

■ There was testimony that Fox was aware, before speaking to Marcus, of the appraisal figure of $182,000. There was also testimony by an expert that $182,000 did represent the fair market value of the property. Marcus testified he never would have entered into the second contract if Fox had apprised him of the $182,000 figure. He also testified that he had asked Fox about the appraisal value and that she had told him first that it was $265,000, and later $241,000. Additionally, Fox had taken it upon herself to arrange financing.

Alternatively, Fox' expert testified that the fair market appraisal value was $241,000 and the $182,000 represented only an income approach to the appraisal. Fox also stated Marcus did not request or rely on her representation of the appraisal value. Therefore, Fox argues, there was not a misrepresentation of a material fact nor was there reliance by Marcus.

Fraud, however, is a question of fact for the jury. *Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564 (1966). The jury, not the court, is the factfinding body. It weighs the contradictory evidence and inferences, judges the witness' credibility and draws the ultimate conclusions as to the facts. *Apache Railway Company v. Shumway*, 62 Ariz. 359, 158 P.2d 142 (1945). Where the trial court's findings are based on a conflict of evidence, they will not be disturbed, since the appellate court views the evidence in the light most favorable to the party in whose favor the jury decided. *Fleming v. Pima County*, 141 Ariz. 167, 685 P.2d 1319 (App.1983), aff'd in part, vacated in part, modified in part, 141 Ariz. 149, 685 P.2d 1301 (1984). Therefore, while the evidence

did conflict, the jury found that Fox had made a material representation and Marcus had relied thereon. The evidence in the record supports that finding. Even if we were to rule that as a matter of law the $182,000 figure represented only an income approach to the appraisal and was not related to fair market value, the jury could still have found that the figure was material and by withholding that figure Fox had misrepresented a material fact. The jury could even have rationally found that by withholding the fact that the appraisal contained three figures and by only telling Marcus of one figure, Fox had misrepresented a material fact. We therefore affirm the denial of the motion for judgment notwithstanding the verdict or in the alternative a new trial.

## II. Prejudgment interest

Fox argues that the award of prejudgment interest was improper because the claim was unliquidated, there was no demand for payment and the claim was excessive.

■ Prejudgment interest is awarded as a matter of right to liquidated claims. *Fleming v. Pima County*, supra. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion. *Cortanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz.App. 313, 533 P.2d 73 (1975). In this case, Marcus was awarded $43,401, the exact amount of the down payment for the subject property. This was clearly an easily calculable figure and is therefore liquidated.

■ In order to recover prejudgment interest on a liquidated sum, however, a demand for payment must be made. Interest only runs from the time the creditor demands payment. *Rawlings v. Apodaca*, 151 Ariz. 180, 726 P.2d 596 (App.1986); *Fairway Builders, Inc. v. Malouf*, 124 Ariz. 242, 603 P.2d 513 (App.1979). The filing of a complaint can be considered a demand for payment. *Fairway Builders, Inc.*, supra. Marcus filed the original complaint on Sep-

tember 1, 1981. At that time, Marcus requested fraud damages in the amount of $77,000. There is no further breakdown of damages in the complaint. The complaint was amended twice, on July 5, 1983, and on February 10, 1984. In each of these amended complaints, however, Marcus continued to request $77,000 in damages. Marcus contends that in *Berthot v. Courtyard Properties, Inc.*, 138 Ariz. 566, 675 P.2d 1385 (App.1983), this court did away with the requirement for a demand and thereby refused to follow *Fairway*. That is an inaccurate reading of *Berthot*. In *Berthot*, an oral demand for a liquidated amount was made and in fact this court cited *Fairway* as authority on the prejudgment interest rule.

■ The plaintiff in a fraud case can elect between rescission or damages, which are measured by the benefit-of-the-bargain rule. *Edward Greenband Enterprises of Arizona v. Pepper*, 112 Ariz. 115, 538 P.2d 389 (1975). The plaintiff may plead in the alternative, but must elect between rescission or damages before submission to the jury. *Greenband Enterprises*, supra. Marcus did not plead for rescission but sought only damages. At trial, Marcus sought only his out-of-pocket expenses, which are an element of the benefit-of-the-bargain damages. *Ulan v. Richtars*, 8 Ariz.App. 351, 446 P.2d 255 (1968). Marcus' complaint, however, never clearly indicated that they were seeking the liquidated sum of $43,401. Marcus did not put the defendants on notice that payment of the out-of-pocket expenses was sufficient to settle the claim. Arizona courts have held that benefit-of-the-bargain damages by their very nature are unliquidated. *Ulan v. Richtars*, supra; *Cole v. Gerhart*, 5 Ariz.App. 24, 423 P.2d 100 (1967). Marcus' request of $77,000, therefore, was a request for an unliquidated amount and not a request for the liquidated sum of $43,401.

■ Marcus also argues that through discovery Fox was aware of the liquidated demand. Fox, however, did not know whether payment of that sum would satis-

fy the claim or even if the down payment was the only out-of-pocket expense sought by Marcus. Marcus could have pled alternatively for rescission or could have set forth a breakdown of the damages in the complaint. If Marcus had done that, then prejudgment interest would have properly been awarded. D. Dobbs, Law of Remedies, § 9.2, at 608 (1973). We therefore hold that the award of prejudgment interest by the court was improper. In light of the above finding, we need not reach the issue of whether, as a matter of public policy, prejudgment interest should not be awarded when the claim is substantially inflated.[1]

### III. Attorney's fees

In each of Marcus' three complaints, an action in fraud was alleged. A.R.S. § 12–341.01(A) allows an award of attorney's fees in actions "arising out of a contract." The fraud action is an action in tort. Arizona courts have held, however, that in order to qualify for attorney's fees under § 12–341.01(A), the action need not have been based in contract. *Sparks v. Republic National Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982); *Wenk v. Horizon Moving & Storage Company*, 131 Ariz. 131, 639 P.2d 321 (1982). The standard used to determine whether attorney's fees should properly be awarded in a tort action is whether the cause of action in tort could not exist *but for* a breach of contract. *Sparks*, supra; *National Indemnity Company v. The St. Paul Insurance Companies*, 150 Ariz. 492, 724 P.2d 578 (App. 1985).

 The supreme court therefore has required an alleged breach of contract before attorney's fees can be awarded. *Sparks*, supra. As the court stated in *Sparks*,

"[t]he tort committed by the insurer in this situation would not involve a breach of the actual contract; therefore, it would not be an action arising from a contract." 132 Ariz. at 544, 647 P.2d at 1142. In this case, no breach of contract was alleged by Marcus. Therefore, attorney's fees would be improper under A.R.S. § 12–341.01(A), and the trial court was correct in not awarding them. It should be noted that division one of this court has used broader language in interpreting § 12–341.01(A). That division has stated that "arising out of a contract" describes an action in which a contract was a factor in causing the dispute. See *National Indemnity*, supra, and *Ash, Inc. v. Mesa Unified School Dist. No. 4*, 138 Ariz. 190, 673 P.2d 934 (App.1983). We must, however, follow the edict of the supreme court, especially when its language is so clear and on point.

■ Marcus also argues that regardless of A.R.S. § 12–341.01, his contract with Fox calls for the award of attorney's fees. The contract does state that attorney's fees will be awarded to the prevailing party "in the event of legal action between any of the signatories to this agreement to enforce the terms thereof." This lawsuit, however, was not to enforce the terms of the agreement and no fees can be awarded under the contract.

Affirmed in part and reversed in part.

LACAGNINA and LIVERMORE, JJ., concur.

---

**1.** There is no case law on this point in Arizona. Other jurisdictions are split. Some decisions disallow prejudgment interest when claims are substantially inflated. See, e.g., *Rose Hall Limited v. Chase Manhattan Overseas Banking Corp.*, 566 F.Supp. 1558 (D.Del.1983); *Slusarski v. American Confinement Systems, Inc.*, 218 Neb. 576, 357 N.W.2d 450 (1984); *Miller v. New Jersey Ins. Underwriting Assoc.*, 177 N.J.Super 584, 427 A.2d 135 (1981); *Warrior Constructors,* *Inc. v. Small Business Investment Co. of Houston*, 536 S.W.2d 382 (Tex.Ct.App.1976). Other decisions allow prejudgment interest in spite of exaggerated claims. See, e.g., *Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239 (8th Cir.1981); *Schroeder v. Tug Montauk*, 358 F.2d 485 (2nd Cir.1966); *Interstate Steel Corp. v. S.S. "Crystal Gem"*, 317 F.Supp. 112, (S.D.N.Y.1970); *Tuthill v. Southwestern Public Service Co.*, 614 S.W.2d 205 (Tex.Ct.App.1981).