229 P.3d 1031

**COMERICA BANK, a Michigan banking corporation, Plaintiff/Appellee,**

v.

**Hadi MAHMOODI and Parisa Mahmoodi, husband and wife, Defendants/Appellants.**

**No. 1 CA–CV 08–0771.**

Court of Appeals of Arizona, Division 1, Department B.

May 4, 2010.

Snell & Wilmer L.L.P. by Danielle J. Viola, Martha E. Gibbs, Richard B. Siever, Phoenix, Attorneys for Plaintiff/Appellee.

Keller Rohrback, P.L.C. by Ron Kilgard, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

SWANN, Judge.

¶ 1 Defendants–Appellants Hadi and Parisa Mahmoodi appeal from the superior court's summary judgment in favor of Plaintiff–Appellee Comerica Bank on its fraud claim. For the following reasons, we reverse and remand.

*Factual and Procedural Background*

¶ 2 This action arises out of a loan transaction between Comerica and Xeba, Inc., a private company started by Hadi Mahmoodi that sold computer systems. Hadi served as President and CEO of Xeba.

¶ 3 On November 26, 2002, Comerica and Xeba entered into a Loan and Security Agreement (the "Agreement") pursuant to which Comerica agreed to extend Xeba a line of credit for $7.5 million, secured in part by Xeba's accounts receivable. In conjunction with the Agreement, Xeba executed a Re-

volving Promissory Note in the amount of $7.5 million. The Mahmoodis also executed a Limited Continuing Guaranty, in their individual capacities and as co-trustees of the Mahmoodi Revocable Trust, guaranteeing full and timely payment and performance of Xeba's liabilities under the Agreement, limited to 5% of the loan amount. From the inception of the loan through August 19, 2003, Xeba borrowed $7,480,850.12 from the line of credit.

¶ 4 On September 25, 2003, Comerica learned that Xeba had relocated its facility without notifying Comerica. Comerica then sought additional information from Xeba regarding its operations and accounts. Comerica was dissatisfied with the information Xeba provided and determined that Xeba had breached the Agreement.

¶ 5 On October 10, 2003, Comerica accelerated Xeba's obligations under the Agreement and demanded immediate payment of all outstanding amounts. Comerica also demanded payment from the Mahmoodis pursuant to their guaranty. The same day, Comerica commenced this action against Xeba, the Mahmoodis, and the Mahmoodi Revocable Trust. On October 14, 2003, Xeba sought Chapter 7 bankruptcy protection.

¶ 6 Under the Agreement, Xeba was required each week to present to Comerica a Borrowing Base Certificate ("BBC") that reflected Xeba's total accounts receivable. Xeba's August 19, 2003 BBC showed a total accounts receivable of $10,777,890.41, its September 2, 2003 BBC showed a total of $11,538,104.34, and its September 17, 2003 BBC showed $11,300,906.18.[1] When Xeba submitted schedules of its accounts receivable to the bankruptcy court, however, it claimed that as of October 9, 2003, it had receivables of only $3,138,342.29.

¶ 7 In 2005, Hadi was involved in a traffic accident that rendered him mentally incapacitated and unable to remember any of his business dealings with Comerica. As a result, he could not be deposed and could not assist in responding to any written discovery

---

1. Although the Agreement required Xeba to provide weekly BBCs to Comerica, the bi-weekly BBCs are the only BBCs contained in the record.

in the litigation. Ultimately, the superior court appointed a special conservator for him.

¶ 8 On February 1, 2006, Comerica amended its complaint to add a fraud claim against Hadi. Comerica alleged Hadi had knowingly and intentionally submitted BBCs to Comerica in August and September 2003 that falsely represented the value of Xeba's accounts receivable, and that Comerica reasonably relied on those false statements to its detriment.

¶ 9 Comerica moved for summary judgment on its breach of guaranty and fraud claims. With respect to the fraud claim, it argued there was no genuine issue of material fact as to any of the elements of the claim because the evidence supported a strong inference that Hadi knowingly and intentionally submitted BBCs to Comerica in August and September 2003 that falsely represented the value of Xeba's accounts receivable. Comerica argued that, as a result of his condition, Hadi was unable to overcome the inference of fraud because he could not present any evidence regarding his knowledge or intent.

¶ 10 The Mahmoodis did not oppose the motion as it related to the breach of guaranty claim, and we do not address that claim here. With respect to the fraud claim, the Mahmoodis argued that Comerica had not established entitlement to judgment on its fraud claim as a matter of law because the elements of knowledge, intent, reliance and the reasonableness of reliance were purely subjective. The Mahmoodis also claimed there was a material dispute of fact regarding whether Hadi signed the BBCs at issue. In addition, at oral argument on the motion, the Mahmoodis argued that Comerica failed to demonstrate that any misrepresentations by Hadi had caused it any damage.

¶ 11 The court granted summary judgment for Comerica, and entered judgment against the Mahmoodis in the amount of $11,097,678.94 on the fraud claim and $577,432.16 on the breach of guaranty claim.

The Mahmoodis timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).[2]

*Standard of Review*

¶ 12 A court may grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). Summary judgment is available "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Even in the absence of a dispute of fact, summary judgment is improper if the evidence of record does not demonstrate that the movant is entitled to judgment as a matter of law. If the evidence would allow a jury to resolve a material issue in favor of either party, summary judgment is improper. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990).

¶ 13 We review the facts in the light most favorable to the party against whom summary judgment was entered, *Riley, Hoggatt & Suagee, P.C. v. English*, 177 Ariz. 10, 12, 864 P.2d 1042, 1044 (1993), and determine *de novo whether any genuine issues of* material fact exist and whether the trial court incorrectly applied the law. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997).

*Discussion*

█ ¶ 14 A claim for fraud requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably

---

**2.** Comerica obtained a judgment against the Mahmoodi Revocable Trust on August 9, 2006, and it never served Xeba. Accordingly, the court's judgment against the Mahmoodis resolved the final remaining claims in the action.

*See McHazlett v. Otis Eng'g Corp.*, 133 Ariz. 530, 532, 652 P.2d 1377, 1379 (1982) (holding unserved defendants are not "parties" within the meaning of Rule 54(b) ).

contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury. *Marcus v. Fox,* 150 Ariz. 342, 344, 723 P.2d 691, 693 (App.1985), vacated in part by 150 Ariz. 333, 723 P.2d 682 (1986). The trial court determined that no material question of fact existed on any of these elements and granted summary judgment for Comerica. The Mahmoodis argue that the court erred because Comerica did not establish the elements of reliance, the right to rely, knowledge of falsity, or proximate injury by clear and convincing evidence.

¶ 15 The record contains evidence that Hadi directed Xeba's accountant to prepare the August 19, 2003, September 2, 2003, and September 17, 2003 BBCs, which Hadi would then review and transmit to Comerica, as required by the Agreement. As noted above, there was a substantial difference between the receivables reported in the August and September BBCs and the schedules submitted in October to the bankruptcy court.

■ ¶ 16 In addition, a former Comerica vice president submitted a declaration to the effect that Comerica relied on the representations contained in the BBCs as assurance of its collateral. She claimed that if Comerica had known about Xeba's true financial condition, it would have accelerated the loan pursuant to the terms of the Agreement.[3]

¶ 17 Comerica contends that this evidence constituted a prima facie case of fraud and raised a strong inference that Hadi knowingly and intentionally submitted false BBCs to Comerica that it reasonably relied on to its detriment. We agree with this contention. It then argues that because Hadi is unavailable to rebut this evidence, it was entitled to summary judgment. We disagree with this argument as a matter of logic and law.

¶ 18 Frequently, a motion for summary judgment involves an assertion by a defendant that the plaintiff has insufficient evidence to meet its burden of production at trial. The well-accepted logic of the argument is that because plaintiff cannot establish a prima facie case worthy of submission to a jury, defendant is necessarily entitled to judgment as a matter of law. The fallacy of Comerica's argument here lies in its assumption that the inverse of the logic underlying a defense motion holds true for a plaintiff's motion. It is not the law that where the plaintiff *does* establish a case that would warrant submission to a jury, it is necessarily entitled to judgment as a matter of law in the absence of rebuttal evidence by the defense.

■ ¶ 19 "The burden of persuasion on the summary judgment motion is heavy. '[W]here the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper.' Further, a court must view the evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor." *Nat'l Bank of Ariz. v. Thruston,* 218 Ariz. 112, 116, ¶ 17, 180 P.3d 977, 981 (App.2008) (internal citations omitted). Logically, then, a plaintiff seeking summary judgment cannot rely on evidence that merely could cause a jury to find in its favor. Viewing the evidence in the light most favorable to the nonmoving party, the motion must be denied if a reasonable jury could conclude that the plaintiff had not established every element of the claim with evidence sufficient to satisfy the applicable burden of proof.

■ ¶ 20 In *Thruston,* we observed that "[t]he moving party's burden of persuasion on the motion remains with that party; it does not shift to the non-moving party." 218 Ariz. at 115, ¶ 16, 180 P.3d at 980. Accordingly, the inability of a defendant to offer opposing evidence does not necessarily compel judgment in favor of a plaintiff who presents evidence that is susceptible to different

---

3. We reject defendants' argument that the declaration regarding Comerica's reliance and right to rely on the BBCs is insufficient to support summary judgment because the witness should have been subject to cross-examination at trial. A party opposing a motion for summary judgment is not entitled to proceed to trial on the mere hope that the jury will disbelieve uncontroverted testimony. *See Orme Sch.,* 166 Ariz. at 311, 802 P.2d at 1010 ("[I]t would effectively abrogate the summary judgment rule to hold that the motion should be denied simply on the speculation that some slight doubt ... might blossom into a real controversy in the midst of trial.").

assessments by a reasonable finder of fact.[4] *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009 ("[s]ummary judgment *should* not be used as a substitute for jury trials simply because the trial judge may believe the moving party *will* probably win the jury's verdict, nor even when the trial judge believes the moving party should win the jury's verdict."). Put differently, a plaintiff may only obtain summary judgment if it submits undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim.[5]

¶ 21 Viewing the evidence and all inferences in the light most favorable to the Mahmoodis, we agree with Comerica that it has met its burden of persuasion under the clear and convincing evidence standard with regard to the following elements of its fraud claim: the existence of a representation, the materiality of the representation, the Mahmoodis' intent that Comerica rely, Comerica's right to rely, Comerica's ignorance of falsity of the representation and its actual reliance. With respect to the remaining elements (falsity, defendants' knowledge of the falsity and proximate injury) we conclude that Comerica has submitted evidence sufficient only to satisfy its burden of production at trial—not to compel a conclusion that it has satisfied its ultimate burden of persuasion.

¶ 22 With respect to intent, the evidence establishes that defendants presented dramatically different valuations of Xeba's accounts receivable to Comerica in September 2003 and to the bankruptcy court in October 2003. To be sure, this evidence could support an inference that one or both of the representations were false and that Hadi, as a person with access to the data, intended to present inflated numbers to Comerica to induce it to continue to extend the loan. But absent evidence showing the true state of Xeba's accounts receivable on the dates of the representations and Hadi's actual knowledge of the facts at the relevant times, we cannot conclude that Comerica has met its burden of persuasion. A reasonable jury could infer from the fact that such a large discrepancy existed within such a short period of time that the BBCs contained false representations regarding the value of Xeba's accounts receivable. However, a reasonable jury could also draw a number of other inferences. A jury could reasonably find that there is insufficient evidence to show that the BBCs were false—the value of Xeba's accounts receivable may actually have changed substantially between September and October. Similarly, a jury could find clear and convincing evidence that the BBCs were false but fail to find that Hadi was aware of the falsity when they were transmitted to Comerica.

¶ 23 Because reasonable jurors could reach different conclusions as to whether Comerica's evidence standing alone satisfied the burden of persuasion by clear and convincing evidence, the court improperly granted summary judgment. *See Beaudry v. Ins. Co. of the West*, 203 Ariz. 86, 89, ¶ 10, 50 P.3d 836, 839 (App.2002) ("Where reasonable minds may draw different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented." (citation omitted) ).

¶ 24 Moreover, Comerica failed to meet even its burden of production on the question whether any false representations contained in the August or September BBCs proximately caused it the full damage it sought. *See Smith v. Don Sanderson Ford, Inc.*, 7 Ariz.App. 390, 392, 439 P.2d 837, 839 (1968) (a showing of actual damages is essential to a case of fraud). Indeed, Comerica presented no evidence at all that it was damaged to the

---

4. This principle is illustrated by an analogy to a jury trial. When a plaintiff rests, it is not necessarily entitled to judgment merely because the defendant rests without presenting any evidence on its own behalf. If reasonable jurors could disagree on whether the plaintiff has proved its case with its own evidence, such a case may not be decided by the court—it must still be submitted to the jury.

5. Even at the summary judgment stage, the court must view the evidence through the lens of the substantive burden of proof that would apply at trial. *Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 486, 724 P.2d 562, 572 (1986) (holding when a plaintiff is required to establish its case by clear and convincing evidence, the summary judgment inquiry will be "whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." (citation omitted) ); *see also Orme Sch.*, 166 Ariz. at 308, 802 P.2d at 1007.

full extent of the loan by its reliance on the BBCs. It is undisputed that by the time Hadi submitted the August 2003 BBC, Xeba had already borrowed $7,480,850.12, and Comerica's decision to lend that amount cannot therefore have been a result of reliance on the BBCs.[6] There is no evidence that Comerica advanced any additional funds on the line of credit in reliance on the BBCs at issue, and there is no evidence that it would have been better able to recover any part of the loan had it accelerated Xeba's obligations and demanded immediate payment of all outstanding amounts on August 19, 2003. The record lacks any proof of the amount of damages Comerica incurred, and the award of all damages it sought was therefore erroneous.

### Conclusion

¶ 25 Because plaintiff failed to present evidence sufficient to demonstrate that no reasonable juror could find against it on each element of its claim, it was not entitled to judgment as a matter of law. We therefore reverse and remand this matter to the superior court for further proceedings consistent with this decision.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and DANIEL A. BARKER, Judge.

---

6. Apart from the three BBCs submitted in the weeks preceding Xeba's default, Comerica has not presented any evidence of other false representations.