NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

PACIFIC OFFICE AUTOMATION INC,
*Plaintiff/Appellee,*

v.

CSG WEST LLC,
*Defendant/Appellant.*

No. 1 CA-CV 20-0709
FILED 12-21-2021

Appeal from the Superior Court in Maricopa County
No. CV2018-001524
The Honorable Margaret R. Mahoney, Judge

**REVERSED AND REMANDED**

COUNSEL

Manolio & Firestone, PLC, Scottsdale
By Veronica L. Manolio
*Counsel for Plaintiff/Appellee*

Jennings Strouss & Salmon, PLC, Phoenix
By Scott F. Frerichs, Sarah E. Epperson
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

---

**W E I N Z W E I G**, Judge:

**¶1**　　　　Defendant CSG West, LLC ("West") appeals from the superior court's order granting summary judgment to Plaintiff Pacific Office Automation, Inc. ("Pacific").  We reverse and remand as follows.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　This is a breach of contract action between Pacific and West.  Pacific sells office equipment and information technology services to Arizona businesses.  West is a local construction company owned and operated by Glenn and Lorraine Edwards.

**¶3**　　　　In January 2016, two representatives from Pacific pitched a make-over to the Edwards of West's office technology systems.  They met at the Edwards' home and Laverne Wendt, West's Accounting Manager, was also present.  Mr. Edwards claims he made "perfectly clear" at this meeting that he "was the owner" and "Lorraine [Edwards] was second in command."  As things wrapped up, the Edwards expressed interest in moving forward.

**¶4**　　　　Almost a month later, a representative of Pacific emailed Ms. Wendt to "follow up" and answer "any questions about moving forward."  On February 10, Ms. Wendt responded: "Glenn [Edwards] and I had our conversation regarding moving forward.  It is official, he is ready to sign papers to start the process, however, he wants to go ahead and bit [sic] the bullet and get new laptops with the docking stations."  Wendt ended with a final request: "Please forward the necessary documents to sign and I will meet up with Glenn to sign and send back."

**¶5**　　　　At some point, Ms. Wendt, as West's "Accounting M[anager]," received and signed Pacific's "Managed Services Agreement" ("First Contract").  The First Contract is dated January 25, 2016, but Ms. Wendt's signature is undated, and it is unclear from the record when she signed it.  The First Contract required West to make five years of monthly payments to Pacific in exchange for Pacific's computer equipment and

services, including IT management, workstation set-up, email services and cloud services. The contract was "non-cancelable." Pacific later delivered and installed the equipment, and West started to pay the monthly invoices.

¶6 About five months later, Ms. Wendt signed a second contract, titled an Amendment ("June Amendment"), upgrading West's service and adding $108 per month. The next month, Ms. Wendt signed a third contract ("July Amendment"), upgrading West's service and adding $36 per month. Ms. Wendt signed the June and July Amendments as West's "Controller."

¶7 For about ten months, West paid Pacific's invoices; but then it stopped, and Pacific contacted Mr. Edwards, stressing "the nature of the IT agreement" and offering to discuss the parties' IT relationship. Mr. Edwards responded for West. He complained the technology did not work as promised, instead "crash[ing] regularly" and impeding West's workflow. Pacific said West was still bound by the agreements but offered to assess the situation and resolve any system problems. But Mr. Edwards insisted on "a simple walk-away," emphasizing that the product was "unusable" and "unworkable." Pacific eventually sent West a notice of default, both demanding payment and threatening suit.

¶8 In January 2018, Pacific sued West for breach of the First Contract, June Amendment and July Amendment, alleging that West contracted to purchase computer equipment and IT services. Pacific attached all three contracts to its complaint, claiming West "entered into a Managed Services Agreement" "[o]n or about January 25, 2016," the date of the First Contract. West answered and counterclaimed,[1] insisting the contracts were unenforceable because Ms. Wendt lacked authority to bind West. West later claimed it had an oral agreement with Pacific for hardware discussed at the first meeting, and that agreement governed the relationship.

¶9 Discovery was slow. West missed the deadline for initial disclosure statements and failed to answer Pacific's discovery requests promptly.

¶10 In June 2019, about 36 months into the lawsuit and on the morning of Mr. Edwards' deposition, Pacific disclosed a second "Managed Services Agreement," dated February 19, 2016 ("Second Contract"). The Second Contract mirrored the First Contract except the monthly payments

---

[1] West does not appeal the dismissal of its counterclaims.

were reduced (from $3,432.50 to $3,312.50) and it identified slightly different equipment. But unlike the First Contract or the June and July Amendments, the Second Contract included Mr. Edwards' signature. Mr. Edwards admitted the signature looked like his, but he disputed its authenticity and claimed he could not remember signing the Second Contract.

¶11        Pacific then turned its attention to the Second Contract and refashioned its lawsuit as one for breach of the Second Contract. Five months later, in November 2019, Pacific served its second supplemental disclosure on West. Pacific now called the Second Contract the "[O]riginal Contract," followed by the June and July Amendments; and Pacific demoted the First Contract to a "proposal." Pacific did not, however, amend its complaint.

¶12        Pacific moved for summary judgment in December 2019, again describing the First Contract as a mere "proposal/estimated Managed Services Agreement," and describing the Second Contract as "the Original Contract," adding that Pacific "delivered and installed the [e]quipment at [West's offices] shortly after the Original Contract was entered." West countered that Pacific had changed its breach of contract claim from the First Contract to the Second Contract, which mattered because it changed the issue from the apparent authority of Ms. Wendt to the actual authority of Mr. Edwards. It also added an authenticity issue because Mr. Edwards claimed he never signed the Second Contract.

¶13        But then, at oral argument, Pacific reverted to the First Contract. Pacific's attorney argued the First Contract was enforceable and West breached it. Belittling the Second Contract, Pacific said it was only disclosed to prove Mr. Edwards knew about and ratified the First Contract.

¶14        After oral argument, the superior court ruled from the bench, granting summary judgment to Pacific, and agreeing the lawsuit had always been about the First Contract. The court determined that West, the non-movant, had not carried its burden of proof because it had not "established material facts in dispute in response to this motion for partial summary judgment." The court found that West had "not sufficiently contested" the "issue of signature and authority," adding that West had "not sufficiently contested it on the facts, or the law," and the court was "curious to know why [West] wouldn't have provided affidavits [or] declarations that would have provided the Court with more."

¶15    The court granted Pacific all damages it requested ($135,299.50), plus attorney fees and costs. West timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶16    We review de novo the superior court's grant of summary judgment, *Jackson v. Eagle KMC LLC*, 245 Ariz. 544, 545, ¶ 7 (2019), construing the facts in the light most favorable to the non-moving party, *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). Summary judgment is appropriate only when "the moving party shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

¶17    When the moving party is a plaintiff claiming breach of contract, that plaintiff bears a heavy burden to prove every element of the claim with "undisputed admissible evidence that would compel any reasonable juror to find in its favor." *Wells Fargo Bank*, 231 Ariz. at 213, ¶ 18 (citation omitted); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 15 (App. 2008). "A plaintiff's motion must stand on its own and demonstrate by admissible evidence that the plaintiff has met its burden of proof and that it is entitled to judgment as a matter of law." *Wells Fargo Bank*, 231 Ariz. at 211, ¶ 1. The plaintiff always bears the ultimate burden of persuasion, and "the mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff to judgment." *Id.* at ¶¶ 1, 16.

*The Contract: A Moving Target*

¶18    At the outset, we note that Pacific's breach of contract theory hinged on different contracts at the complaint and summary judgment stages. The complaint alleged that West entered and breached the First Contract, signed by Ms. Wendt. The motion for summary judgment argued that West entered and breached the Second Contract, signed by Mr. Edwards.

¶19    Then, at oral argument, Pacific reverted to the First Contract theory. Ruling from the bench, the superior court accepted and rationalized this moving target, concluding that Pacific was "still suing" under the First Contract, and only introduced "the evidence related to the [Second Contract] to reflect that [Mr. Edwards] did know of the [First Contract]." And so, the court only granted summary judgment to Pacific under the First Contract. We turn there now.

*Pacific Never Met Its Burden for Summary Judgment*

¶20        On the merits, the superior court granted summary judgment on Pacific's theory that West breached the First Contract. We must therefore decide whether Pacific "demonstrate[d] the evidence entitles it to judgment as a matter of law." To meet this standard, Pacific must offer "undisputed admissible evidence" with its motion for summary judgment "that would compel any reasonable juror to find" that Pacific carried its burden to prove all three elements of its breach of contract claim. *Wells Fargo Bank*, 231 Ariz. at 213, ¶ 18; *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 196 (App. 1990) (plaintiff movant must "produc[e] uncontroverted prima facie evidence in support of its motion" for summary judgment). Its breach of contract claim requires proof that: (1) West and Pacific entered a contract, (2) West breached the contract and (3) Pacific has been damaged. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353, ¶ 22 (2016).

¶21        Pacific argued and thus bore the burden to prove that Ms. Wendt had either actual or apparent authority to enter the First Contract for West. *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 511–12, ¶ 29 (App. 2011). Whether an agent has authority, and the extent of that authority are typically questions of fact, and thus inappropriate for resolution on summary judgment. *See Bud Antle, Inc. v. Gregory*, 7 Ariz. App. 291, 293 (1968).

¶22        A corporation "necessarily acts through its agents, who, in turn, may only bind a principal within the scope of their authority, actual or apparent." *Best Choice Fund*, 228 Ariz. at 510-11, ¶ 26. "Actual authority includes both express authority outlined in specific language, and implied authority when the agent acts consistently with the agent's 'reasonable interpretation of the principal's manifestation in light of the principal's objective and other facts known to the agent.'" *Id.* (citation omitted). "Apparent authority exists when a principal engages in intentional or inadvertent conduct that allows a third party reasonably to conclude that the agent has actual authority." *Id.* at 511, ¶ 29.

¶23        All agents, however, "may only bind a principal within the scope of their authority, actual or apparent," *id.* at ¶ 26, and the "mere fact that one is found to be a general agent justifies nei[ther] the court nor jury in guessing that given acts are within the scope of his authority." *Lois Grunow Mem'l Clinic v. Davis*, 49 Ariz. 277, 285 (1937). And even when dealing with a known agent, the plaintiff "must exercise due caution in ascertaining whether the agent is acting within the scope of his authority, if

he wishes to bind the principal." *Best Choice Fund*, 228 Ariz. at 512, ¶ 29 (quoting *Lois Grunow Mem'l Clinic*, 49 Ariz. at 284).

¶24 We reverse and remand for three reasons. First, the superior court improperly shifted the burden onto the defendant, West, to defeat summary judgment. When ruling from the bench, the court remarked: "So, curiously, if that were—if that were the case and that's kind of where the gaps existed for [West] to establish material facts in dispute in response to this motion for partial summary judgment, I'm curious to know why [West] . . . wouldn't have provided affidavits, declarations that would have provided the Court with more."

¶25 That was error. Because Pacific moved for summary judgment on its breach of contract claim, Pacific had to do more than show there were no disputed facts; it needed to provide "undisputed admissible evidence" that would persuade any reasonable juror on the question of actual or apparent authority. *See Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 292–93, ¶¶ 19-20 (App. 2010). Pacific bore the burden to prove that Ms. Wendt possessed actual or apparent authority, and that Pacific's reliance on Ms. Wendt's apparent authority was reasonable. *See Best Choice Fund*, 228 Ariz. at 512, ¶ 29; *see also* 2 Fletcher Cyc. Corp. § 449 ("The burden of proving apparent authority is on the person seeking to bind the principal.").

¶26 Pacific compounds the error on appeal, arguing that "[West] did not sufficiently prove their defense that Ms. Wendt lacked authority." Actual and apparent authority are forms of agency deployed here to satisfy the first element of Pacific's breach of contract claim. *Johnson Bank*, 239 Ariz. at 353, ¶ 22 (2016); *see also* Harvard L. Rev. Assoc., *The Power of an Agent to Bind His Principal by Acts Beyond His Actual or Apparent Authority*, 42 Harv. L. Rev. 685, 688 (1929) (a principal's liability under theories of actual or apparent authority is based on ordinary principles of the law of contracts). West did not have the burden to "disprove" prima facie elements of Pacific's claim. *See Benkendorf v. Advanced Cardiac Specialists Chartered*, 228 Ariz. 528, 531–32, ¶¶ 12, 13 (App. 2012) (rejecting notion that defendant had to rebut plaintiff's claim).

¶27 Second, the superior court improperly weighed witness testimony and assessed credibility at the summary judgment stage. In particular, the court questioned Mr. Edwards' credibility at oral argument before it granted summary judgment from the bench. As background, Pacific offered the Second Contract to prove that Mr. Edwards approved the First Contract, but Mr. Edwards claimed he never signed the Second Contract. Hearing about Mr. Edwards' denial, the court remarked:

"Doesn't [Mr. Edwards] say about 35, 40 times in his deposition he doesn't remember doing something," adding "my point simply [is] it's a consistent kind of answer from this witness" and "[h]e seemed to have a real problem with the concept that the ink color was different in his signature than someone else's, which made no sense to me at all." So too, the court questioned the avowal of Mr. Edwards that he did not remember being "copied on" emails relevant to apparent authority. Sharing an internal monologue, the court said: "I'm not suggesting he's lying," and "I guess that's a credibility call about what kind of memory this fellow has."

¶28 That was error. In ruling on a summary judgment motion, a court may not pass on the credibility of witnesses, weigh the quality of evidence, or choose among conflicting inferences. *Orme Sch. v. Reeves*, 166 Ariz. 301, 311 (1990). Summary judgment must not "be used as a substitute for jury trials simply because the trial judge may believe the moving party will probably win the jury's verdict, nor even when the trial judge believes the moving party should win the jury's verdict." *Id*. at 310 (emphasis omitted); *see also Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 456, ¶ 23 (App. 2005) ("Though Jennifer might be unlikely to prevail at a trial on the merits, ADES was not entitled to summary judgment because material issues of fact could not be resolved without credibility determinations and weighing of evidence, matters peculiarly and exclusively for a trier of fact.").

¶29 Third, Pacific did not meet its burden for summary judgment. Pacific did not produce "uncontroverted" admissible evidence from which any reasonable juror would conclude that Ms. Wendt had actual or apparent authority to enter the First Contract.

¶30 The evidence at summary judgment was controverted. For instance, Mr. Edwards said at his deposition that Ms. Wendt lacked authority to sign the contracts for West, including the First Contract. Pacific did not depose Ms. Wendt. And the record contains an email from Ms. Wendt to Pacific that casts doubt on the issue of her actual or apparent authority, at least for summary judgment purposes. In that February 10 email, Ms. Wendt reports that "[i]t is official, [Mr. Edwards] is ready to sign papers to start the process," and asks Pacific to "[p]lease forward the necessary documents to sign and I will meet up with [Mr. Edwards] to sign and send back." West might argue that Pacific should have been alerted by this email that Ms. Wendt lacked either actual or apparent authority to enter the First Contract. At a minimum, West might argue the emails shows that Pacific was unreasonable to rely on Ms. Wendt's authority. *See Tribe v. Shell Oil Co.*, 133 Ariz. 517, 519 (1982) ("Summary judgment is inappropriate

where founded on a disputed inference drawn from an undisputed fact."). Because Pacific fell short of its burden to prove each breach of contract element with "undisputed admissible evidence," we reverse. *See Mahmoodi*, 224 Ariz. at 293, ¶¶ 19-20.

**CONCLUSION**

**¶31** We reverse the superior court's order granting summary judgment to Pacific and remand for proceedings consistent with this decision. We likewise vacate the attorney fee award to Pacific. And last, we grant West's request for attorney fees and costs on appeal under A.R.S. § 12-341.01, contingent on compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA