NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAIA FAMILY LIMITED PARTNERSHIP, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

NINEVEH HOLDINGS, LLC, *Defendant/Appellee/Cross-Appellant*,

*and*

EUGENE BRONSON, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0509

FILED 10-08-2024

Appeal from the Superior Court in Maricopa County
No. CV2019-009045
The Honorable Sara J. Agne, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Poli Moon & Zane PLLC, Phoenix
By Michael N. Poli, Lawrence R. Moon
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Perez Law Group PLLC, Glendale
By Steve R. Janssen
*Counsel for Defendant/Appellee/Cross-Appellant*

The Cavanagh Law Firm PA, Phoenix
By Richard W. Mear, Benjamin J. Branson
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

---

**C A T L E T T**, Judge:

**¶1**        Saia Family Limited Partnership ("Saia") sued Eugene Bronson ("Bronson"), his spouse, and Nineveh Holdings, LLC ("Nineveh"), for consumer fraud, fraudulent inducement, and intentional and negligent misrepresentation stemming from statements Bronson allegedly made during the sale of real property to Saia.  The superior court granted summary judgment to the defendants but denied Nineveh's request for attorney fees.  Saia appeals the grant of summary judgment and Nineveh cross-appeals the denial of attorney fees.  Because Saia failed to provide evidence that Bronson's statements were false at the time they were made, we affirm summary judgment.  We, however, vacate the superior court's denial of attorney fees to Nineveh and remand for the court to determine the proper amount of fees to be awarded, if any.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Bronson owned Nineveh, a company that owned and leased commercial real property in Phoenix.  Michelangelo Leasing, a separate transportation company Bronson also owned, was the tenant at Nineveh's property.  In late 2016, Bronson sold Michelangelo Leasing to Silverado Stages ("Silverado") and became an employee and director of Silverado.  After the sale, Silverado replaced Michelangelo Leasing as the tenant at Nineveh's property.

**¶3**        On July 17, 2018, Saia signed an Agreement of Purchase and Sale ("Agreement") to purchase the property from Nineveh.  Under the Agreement, Saia agreed to purchase the property for $3,650,000, subject to

2

the satisfaction of various terms and conditions, including Saia's receipt of various materials from Nineveh and Silverado, such as a survey of the property, an environmental assessment, and proof of insurance. After signing the Agreement, Saia performed due diligence about the property and Silverado. The sale closed on October 1, 2018 ("Property Sale").

**¶4** Within a week of the Property Sale, Silverado filed for Chapter 11 reorganization. Thereafter, Silverado failed to make all lease payments but one, and in December 2018, Silverado converted the bankruptcy to a liquidation proceeding.

**¶5** Saia sued Bronson and Nineveh for consumer fraud, fraudulent inducement, and intentional and negligent misrepresentation. Saia's complaint alleged that, on July 10, 2018, Bronson falsely told Saia that "Silverado had a strong business, was doing very well as an enterprise, and was strong financially," and it alleged that Bronson "knew or reasonably should have known that Silverado was considering filing or intended to file bankruptcy."

**¶6** During discovery, Saia obtained the meeting minutes for Silverado's board of directors. The minutes showed that Bronson attended a meeting on July 14, 2017. Bronson claimed that was the only meeting he ever attended as a director. Bronson characterized his responsibilities at Silverado as similar to that of an employee and claimed he was not involved in the business's operations or finances.

**¶7** Discovery also revealed that, between March 27 and June 11, 2018, EverBank Commercial Finance, Inc. ("EverBank"), a lender to Silverado, sent multiple reservation of rights notices to Bronson. Bronson acknowledged receiving the notices, but said he delivered them to Silverado's Chief Financial Officer ("CFO").

**¶8** In August 2018, before the Property Sale, Saia received Silverado's financial statements, which an independent auditor prepared. The financial statements included details of Silverado's overall debt, including approximately $14 million owed to Volvo Financial Services ("Volvo"). An additional thirteen sections in the financial statements, characterized as "[n]ote[s]," discussed specific topics. Note 5 disclosed that, as of December 31, 2017, Silverado owed nearly $2 million to Western Alliance Bank and "was not in compliance with various financial covenants." Note 13 certified that "[m]anagement has not identified any subsequent events [from January 1 through August 22, 2018] that require disclosure." Before the Property Sale, Silverado also provided Saia with

financial projections showing Silverado expected to continue being profitable.

¶9　　　　In late September 2018, Volvo sued Silverado for breach of contract.　Bronson testified that, on October 3, 2018, Silverado asked him to loan it approximately $400,000 to assist with its forthcoming bankruptcy filing, and he agreed to do so.　Silverado signed the promissory note for the loan on October 4, 2018.　Bronson did not recall having conversations with Silverado about bankruptcy before it decided to file, but he acknowledged he discussed the loan around the time Silverado filed.

¶10　　　　In this litigation, Bronson moved for summary judgment arguing, in part, that "[t]here is no evidence in this case to support [a] finding of any false statement or material omission."　Nineveh sought to join Bronson's motion for summary judgment but did so after the superior court's dispositive motion deadline.

¶11　　　　Because Saia stated it was "relying solely on Bronson's representations regarding Silverado's finances and operations," the superior court analyzed whether Bronson made a misrepresentation about Silverado's finances and business prospects.　The court determined Saia did not "provide[] any evidence that Bronson made any misrepresentations surrounding Silverado's debt."　The court emphasized that Silverado's debt, including the Volvo loan, was disclosed in the financial statements provided to Saia.　The court also concluded that, while Bronson loaned $400,000 to Silverado, that action on its own did not demonstrate Bronson was aware of Silverado's finances before the sale closed.　The court therefore granted summary judgment to Bronson.　But the court rejected Nineveh's request to join Bronson's summary judgment motion because it did not "specifically address[] how [Bronson's] motion applie[d] to [it.]"

¶12　　　　Nineveh moved for reconsideration and clarification, arguing Saia's failure to show Bronson made a misrepresentation meant Nineveh could not be liable because Bronson was Nineveh's sole agent.　After allowing Saia to respond, the court concluded Saia alleged misrepresentations only by Bronson.　It therefore reconsidered its prior decision and granted Nineveh summary judgment.

¶13　　　　Nineveh requested attorney fees under A.R.S. § 12-341.01.　The court denied that request because Saia's claims were "fraud-based" and not based on a breach or enforcement of a contract.

¶14          The court entered final judgment, Saia timely appealed, and Nineveh timely cross-appealed.  We have jurisdiction.  *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.  Summary Judgment

¶15          Saia brought claims against Bronson (and his spouse) for consumer fraud, fraudulent inducement, and intentional and negligent misrepresentation.  Saia argues the superior court improperly granted Bronson summary judgment on those claims.  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).  We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in favor of Saia, the non-moving party.  *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022).

¶16          To succeed, each of Saia's claims required it to show Bronson made a false statement.  *See Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291-92 ¶ 14 (App. 2010) (fraud); *Castle v. Barrett-Jackson Auction Co.*, 229 Ariz. 471, 473 ¶ 9 (App. 2012) (consumer fraud); *St. Joesph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312 (1987) (negligent misrepresentation); *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 16 ¶ 10 (App. 2014) (fraudulent inducement).

¶17          In the superior court, Saia relied on one, and only one, allegedly false statement by Bronson.  That statement, which Bronson allegedly made on July 10, 2018, was that "Silverado had a strong business, was doing very well as an enterprise, and was strong financially."  Saia claimed that statement was an actionable misrepresentation and was alone sufficient to defeat Bronson's summary judgment motion.  We, however, agree with Bronson and the superior court that Saia did not create a genuine issue of fact defeating summary judgment.

¶18          To defeat summary judgment, Saia needed to provide evidence that Bronson's July 10, 2018, statement was false *at that time*.  *See Dawson v. Withycombe*, 216 Ariz. 84, 96 ¶ 27 (App. 2007) ("[T]o constitute actionable fraud, the false representation must be of a matter or fact which exists in the present, or has existed in the past[.]" (quoting *Law v. Sidney*, 47 Ariz. 1, 4 (1936))).  Put differently, Saia needed to produce evidence from which a reasonable jury could find that, as of July 10, 2018, Silverado was not a strong business, was not doing very well as an enterprise, or was not

strong financially. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119 ¶ 26 (App. 2008). Saia did not do so.

¶19 The statement Saia relies upon occurred ten days before the parties entered into the Agreement. During the sales process, Silverado, through Bronson, provided Saia with various financial documents. Saia admitted that "[o]n the 5th and 6th of June, 2018, Bronson (via the listing brokers) sent [Saia] an email with Silverado's financial statements and tax returns for the years 2013 [through] 2017." Moreover, "[i]n August 2018, Bronson provided Mr. Saia financial projections for Silverado." And Bronson provided Saia with Silverado's audited financial statements for the year ended 2017, which were prepared as of August 22, 2018.

¶20 Saia admitted those documents showed that Silverado was a flourishing company. Saia explained, for example, that Silverado's "records indicated that Silverado generated significant profits for the respective time periods and was expected to continue to do so." Those "significant profits," Saia admitted, were "consistent with Bronson's repeated statements to [Saia's President] that Silverado was a profitable company with extensive, stable operations, having been in business for over twenty years." Saia conceded that Silverado's audited financial statements disclose "that there were no subsequent events following December 31, 2017, that would give rise to concern for the auditor." When asked if Saia took issue with anything in Silverado's financial documents, Saia's President responded that the documents did not give rise to any concern that Silverado was "in any financial jeopardy." When asked if there was any "specific line-entry" in those documents that caused "pause when reviewing them," Saia's President responded, "Quite [] the opposite, there are items in here that gave me comfort."

¶21 The record also demonstrates that Silverado's bankruptcy and other financial setbacks largely occurred after Bronson made his allegedly false statement on July 10, 2018. Saia admits that "Volvo's enforcement of its leases and loans with Silverado and refusal to negotiate with Silverado regarding them may have precipitated Silverado's filing for bankruptcy protection[.]" Silverado's financial obligations to Volvo were disclosed to Saia in Silverado's audited financial statements. On September 13, 2018, Volvo filed a lawsuit against Silverado and its owners, and a copy of the complaint was publicly available before the Property Sale closed. But that lawsuit came two months after Bronson's allegedly fraudulent statements. Saia provided insufficient evidence about the status of the Volvo obligations as of July 10, 2018.

¶22          Silverado then filed for bankruptcy protection on October 5, 2018. On October 3, 2018, Bronson agreed to loan Silverado $400,000 (the note was signed October 4, 2018). From this, Saia speculates that Bronson must have known about the bankruptcy when he made the July 10 statement. But Saia has no evidence supporting that speculation and thus cannot use it to defeat summary judgment. *Badia v. City of Casa Grande*, 195 Ariz. 349, 357 ¶ 29 (App. 1999) ("Sheer speculation is insufficient . . . to defeat summary judgment."). Bronson testified Silverado first asked him for a loan on October 3—two days after the Property Sale (and months after Bronson's statement). And Saia submitted insufficient evidence controverting that testimony or suggesting that Silverado was contemplating bankruptcy before Bronson's July 10 statement.

¶23          Silverado also experienced issues obtaining insurance and one of its largest customers, Arizona State University ("ASU"), terminated its agreement with Silverado. But, so far as the record reflects, those issues also arose after July 10, 2018. As to insurance, Saia does not dispute that Silverado had all required insurance at the time of the Property Sale. Saia also admits that, on October 1, 2018, Silverado had insurance set to expire on January 9, 2019, but, on December 4, 2018, Silverado "discovered for the first time that their current insurer would not renew the insurance, even if [Silverado] secured outside funds" to pay the insurer. As to the contract with ASU, Saia admits that ASU first sent a notice of default to Silverado on October 24, 2018, and moved in the bankruptcy proceeding to terminate its contract with Silverado on November 14, 2018. Saia presented insufficient evidence about issues with Silverado's insurance or the ASU contract on or before July 10, 2018.

¶24          So, what evidence did Saia use to show Bronson's July 10 statement was false? First, Saia produced five notices EverBank sent to Bronson between March 27 and June 11, 2018. Contrary to Saia's argument, the five notices did not create a genuine issue of material fact about the falsity of Bronson's statement at the time it was made. Four of the five notices addressed missing or late payments, but the reason for those missed payments is unclear, as is whether the payments were ever made and, if so, when. The other notice was a "[l]etter agreement and reservation of rights signed by the Bronsons regarding EverBank's agreement to discuss modification of one of its loans[.]" It is unclear what the status of the loans was on July 10, 2018—the record does not reflect whether they were modified, paid off, brought current, or in default at that time.

¶25          Also, Silverado's audited financials disclosed that, as of December 31, 2017, Silverado owed approximately $42 million to creditors,

meaning the EverBank loan constituted only a small percentage of Silverado's total liabilities. Among its loans, Silverado had a line of credit from Western Alliance Bank with a balance of $1,974,423—an amount nearly identical to the principal amount owed to EverBank. Silverado's audited financials disclosed that it "was not in compliance with various financial covenants" with respect to that line of credit. But Saia still agreed Silverado's financial documents "reflected profitability and stability" and did not raise any concern that Silverado was "in any financial jeopardy." Finally, Saia admits that Silverado's auditors explained that, as of August 22, 2018, "there were no subsequent events following December 31, 2017, that would give rise to concern for the auditor," which includes the timeframe when EverBank sent the five notices. Saia has no evidence that the auditors were unaware of the status of the EverBank loans when making that statement.

¶26 Second, Saia argues that, as a director of Silverado, Bronson must have known more about Silverado's financial issues than he is letting on. Bronson's knowledge, however, is irrelevant if Saia cannot first create a material issue of fact about the falsity of Bronson's statement. *See Mahmoodi*, 224 Ariz. at 291-92 ¶ 14 (listing falsity and knowledge as separate elements of fraud). In other words, before addressing Bronson's knowledge, Saia must first establish that some event occurred or condition existed before July 10, 2018, from which a jury could conclude that Silverado was not a strong business, was not doing very well as an enterprise, or was not strong financially. Saia did not do so. Regardless, Saia only produced evidence showing that Bronson attended a single Silverado board meeting on July 14, 2017, a full year before Bronson allegedly made the statement underlying Saia's fraud claims. A jury could not find Bronson's statement false based solely on his attendance at a single meeting that occurred a year before the alleged misrepresentation, particularly when Saia has no evidence that the board discussed any financial difficulties on Silverado's part during that meeting.

¶27 In sum, Saia did not produce evidence creating a genuine issue of material fact about the falsity of Bronson's alleged statement at the time it was made. The superior court did not err in granting summary judgment to Bronson (and his spouse).

## II. Motion for Reconsideration

¶28 Saia argues the court erred in granting Nineveh's motion for reconsideration because Nineveh filed its joinder request late and included only a summary statement. We review the superior court's decision

granting a motion for reconsideration for an abuse of discretion. *McGovern v. McGovern*, 201 Ariz. 172, 175 ¶ 6 (App. 2001).

**¶29** A party may move the court to reconsider a decision. Ariz. R. Civ. P. 7.1(e)(1). When that happens, the court must allow all other parties to respond before granting the motion. Ariz. R. Civ. P. 7.1(e)(2). A non-claimant may "move for summary judgment at any time after the action is commenced." Ariz. R. Civ. P. 56(b)(2). But a motion for summary judgment "may not be filed later than the dispositive motion deadline . . . or absent such a deadline, 90 days before the date set for trial." Ariz. R. Civ. P. 56(b)(3).

**¶30** The superior court did not abuse its discretion in granting reconsideration. Although Nineveh filed its joinder after the court's dispositive motion deadline, Bronson filed his motion, which Nineveh joined, before that deadline. Nineveh filed its motion for reconsideration after the parties stipulated to vacate the trial date, and the court allowed Saia to respond before issuing its decision. The court correctly concluded that Saia's claims against Nineveh were predicated solely on statements Bronson made, and thus summary judgment for Bronson necessarily meant summary judgment for Nineveh.

**III. Attorney Fees**

**¶31** Nineveh cross-appeals, arguing the superior court should have awarded it attorney fees under A.R.S. § 12-341.01 because Saia's claim for fraudulent inducement "arose out of contract." We review *de novo* whether a cause of action "arises out of a contract." *Caruthers v. Underhill*, 230 Ariz. 513, 526 ¶ 58 (App. 2012).

**¶32** "An action for fraudulent inducement can arise out of contract for purposes of A.R.S. § 12-341.01 where a party to a contract sues the other contracting party to invalidate the contract." *Caruthers*, 230 Ariz. at 526 ¶ 58. This is because the "cause of action for tort could not have existed but for the . . . contract." *Marcus v. Fox*, 150 Ariz. 333, 336 (1986). The court may award attorney fees when "the dispute concerns the validity of the contract" not just when "there is a breach"; concluding otherwise "would be both inequitable and unjust." *Id.*

**¶33** Saia argues that *Caruthers* and *Marcus* do not apply because it did not sue Nineveh to invalidate the Agreement. Although Saia is correct about the nature of its requested remedy—it sought only damages—the reasoning underlying *Caruthers* and *Marcus* still applies. Saia's cause of action for fraudulent inducement could not have existed but for the

Agreement with Nineveh—without an agreement there could be no inducement. Moreover, nothing in the text of § 12-341.01 suggests that its application turns solely on the nature of the remedy sought. Instead, § 12-341.01(A) allows a fee award "[i]n any contested action arising out of a contract." Finally, Saia's argument is inconsistent with *Marcus*. There, the superior court "awarded Marcus *damages* based on the jury's finding that he had been fraudulently induced to enter the contract," but the court refused to award fees. *Marcus*, 150 Ariz. at 336 (emphasis added). Our supreme court concluded that "[i]f the basis for the [superior] court's decision was that Marcus could not recover under § 12–341.01(A), it is ordered that a new finding be entered," and the court ordered the superior court to instead exercise its discretion to determine an appropriate amount of fees to award, if any. *Id.* We have the same situation here.

¶34 The superior court incorrectly relied on *Morris v. Achen Construction Co.*, 155 Ariz. 512 (1987), to deny Nineveh attorney fees. In *Morris*, our supreme court analyzed whether fraud "between A and B is an action 'arising out of contract' because the alleged fraud caused A to enter into a contract with C." 155 Ariz. at 513. The supreme court held that attorney fees could not be awarded under A.R.S. § 12-341.01 by "fraudulently inducing one to enter into a contract *with a third party*[.]" *Id.* at 514 (emphasis added). As part of its holding, however, the court distinguished its conclusion with an example of when fraudulent inducement does "arise out of contract"—when a party to the contract sues *another party to the contract* and claims fraudulent inducement. *Id.; see also Marcus,* 150 Ariz. at 336.

¶35 Here, Nineveh and Saia were parties to the Agreement. Like the example in *Morris*, a party to the contract (Saia) sued another party to the contract (Nineveh) for fraudulent inducement. The superior court therefore erred in concluding that Nineveh was legally ineligible for an attorney fees award under § 12-341.01(A). We vacate the denial of attorney fees and remand for the court to exercise its discretion to determine the appropriate amount of attorney fees, if any, to award Nineveh based only on its fraudulent inducement claim.

**CONCLUSION**

¶36          We affirm the superior court's grant of summary judgment to the defendants.  We vacate the denial of attorney fees and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV